## No. 355.

### F. CASPAR & Co. *v.* MRS. M. D. STONE, EXECUTRIX.

1. Under La. C. C. Art. 2695, the lessor is responsible to the lessee for damages occasioned by a vice or defect of the thing leased, whether existing at the time of the execution of the lease, or arising since; and, whether known to the lessor at the time of entering upon the contract, or not—provided only they did not arise from the fault of the lessee.
2. The judgment, however, in such case, in favor of the lessee, should be for no more than bare indemnity, for actual loss.

*Appeal from Civil District Court, Division E. Monroe, J.*

*E. E. Moise* for plaintiff and appellee.

*Bayne & Denegre* for defendant and appellant.

KELLY, J.—This is an action, by a lessee against a lessor, to recover, under Art. 2695 of the Civil Code, indemnity for losses alleged to have resulted from damage to certain dry goods of the lessee, occasioned by leakage of rain water from the roof of the leased building.

The text of the Article of the Code is as follows: "The lessor guarantees the lessee against all the vices and defects of the thing which may prevent its being used, even in case it should appear he knew nothing of the existence of such vices and defects at the time the lease was made, and even if they have arisen since, provided they did not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same "

There is in the Code Napoleon an Art. 1721, in the following terms:

"Il est dû garantie au preneur pour tous les vices ou défauts de la chose louée qui en empêche l'usage, quand même le bailleur ne les aurait pas connu lors du bail.

"S'il résulte des vices ou défauts quelque perte pour le preneur, le bailleur est tenu de l'indemniser."

The French Courts have held that, under this Article: "Des dommages interêts peuvent être accordés au preneur à raison de la perte qui résulte pour lui des vices ou défauts de la chose louée, *sans destruction du cas ou les vices étaient connus du bailleur et celui ou il les ignorait.*" Sirey, Code Ann. par Gilbert, Art. 1721, No. 3.

Contrary to this view, which is likewise that of Delvincourt, t. 3, p. 191, Marcadé, and others of the French Commentators, are of opinion that the expression "quand même le bailleur ne les aurait pas connu lors du bail," in the first of the two distinct clauses into which the legislator saw proper to divide the Article of the French Code, ought not to be considered to apply to or extend the operation of the terms of the second clause, in which the legislator did not embody any such expression; and upon this

theory of interpretation, it is contended that, by analogy to the liability of the vendor, in the contract of sale, the liability of the lessor, mentioned in the second clause of the Article, should not be construed to extend to losses resulting from vices or defects of the thing leased which were not known to the lessor at the time of the lease. *Vide* Marcadé, vol. 6, p. 447.

Whatever degree of plausibility this theory of interpretation of the Article of the French Code may possess, it can have no proper application to the interpretation of Art. 2695 of the Civil Code of Louisiana. The text of this Article is unambiguous, the expression "even if he knew nothing of the existence of such vices or defects at the time the lease was made," is so intimately connected, in the structure of the sentence, with the expression " and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same," that the two cannot be disconnected in meaning except by violent dislocation and dismemberment of the correlative parts of the sentence which the Courts should interpret in its integrity

That Art. 2695 C. C. was not intended to be a mere literal and servile copy of Art. 1721 of the French Code, but was designed to differ from it, in material particulars, is evident from the fact, that the Article of our Code expressly provides that the lessor shall be liable to the lessee for losses resulting from the vices or defects of the thing leased, not only in case it should appear that he knew nothing of the existence of such vices or defects at the time the lease was made, but " *even if they have arisen since, provided they do not arise from the fault of the lessee;*" while the Article of the French Code is entirely silent as to any liability of the lessor for losses resulting from vices or defects of the thing arising after the execution of the lease. It is quite obvious that the measure of the liability of the lessor, as established by Art· 2695 of the Civil Code of Louisiana,was intended to be larger and more comprehensive than that established by Art. 1721 of the Code Napoleon.

The doctrine of our law is clearly and accurately stated in

Perret vs. Dupré, 2 Rob. 54 : " The lessor is bound to indemnify the lessee for all damages sustained by the latter in consequence of the vices and defects of the thing leased, even if he knew not of the existence of such vices and defects at the time the lease was made and even when they have arisen since."

Upon consideration of all the authorities referred to in argument and examination of all the evidence in the record. we concur in the views expressed and the conclusion reached by the learned Judge *a quo*, as set forth in his written opinion, except as to the amount for which the plaintiffs are entitled to judgment. We concur in the view that they are entitled to recover only a bare indemnity for their actual loss ; but, *that* the judgment does not appear to accord to them. The proof is that the original cost to plaintiffs of the goods mentioned in the list annexed to the original petition was $304.25, and the original cost of the goods mentioned in the list annexed to the supplemental petition was $715.66, making a total of $1019.91. The proof is further, that the goods were sold in their damaged state for all they would bring, and that this amounted to the sum of $212.95, which amount, deducted from $1019.91, the original cost of the goods, shows an actual loss of $806.96, for which we consider the plaintiffs entitled to judgment.

It is therefore ordered, adjudged and decreed, that the judg‑ ment appealed from herein be amended by increasing the amount thereof in favor of the plaintiffs, F. Caspar & Co., and against the defendant, Mrs. M. D. Stone, Executrix of Dr. Warren Stone, deceased, from the sum of six hundred and seventy-nine dollars and ninety-four cents to the sum of eight hundred and six dollars and ninety-six cents, with legal interest thereon from judicial demand, and cost, and that as so amended the said judgment be affirmed, the appellant to pay the costs of the appeal.